**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| FRANCO TEZA MENDEZ, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:16-CR-0341-MHC-CMS-6 |
| UNITED STATES, | : | |
|     Respondent. | : | CIVIL FILE NO. |
| | : | 1:19-CV-4539-MHC-CMS |

**UNITED STATES MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION**

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his federal sentence entered in this Court under the above criminal docket number. The matter is before the Court on the motion to vacate [Doc. 394], Respondent's response [Doc. 460], and Movant's reply [Doc. 498]. For the reasons discussed below, Movant's motion to vacate and a certificate of appealability (COA) are due to be denied.

## I.  **Background**

In October 2016, Movant was charged by complaint with two drug crimes. [Doc. 1]. In December 2016, the grand jury for the Northern District of Georgia brought a superseding indictment against Movant and co-conspirators Paola

Valenzuela Arevalo, Herbert Jonathan Castillo Juarez, Clifford Waldthausen, Luis Sarti Gomez, and Angel Bojorquez-Amaya. [Doc. 49]. By the end of January 2017, Waldthausen, Gomez, and Bojorquez-Amaya all had entered guilty pleas. [Docs. 72, 80, 86]. In March 2017, the grand jury for the Northern District of Georgia, brought a second superseding indictment against Movant and co-conspirators Arevalo, Juarez, and Alden Lougee. [Doc. 93]. The grand jury charged Movant on the following four counts: (1) conspiring with, among others, Bojorquez-Amaya to possess with the intent to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(i) and (b)(1)(B(ii)(II); (2) conspiring with, among others, Bojorquez-Amaya to knowingly and intentionally import heroin and cocaine into the United States, in violation of 21 U.S.C. §§ 963 and 960(b)(1)(A) and (b)(2)(B); (3) aided and abetted by others, including Bojorquez-Amaya, possessing with intent to distribute heroin and cocaine, in violation on 21 U.S.C. § 841(a)(1) and (b)(1)(A)(i) and 18 U.S.C. § 2; and (4) aided and abetted by others, including Bojorquez-Amaya, knowingly and intentionally importing heroin and cocaine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a) and (b)(1)(A) and 18 U.S.C. § 2. [Doc. 93

at 1-4].[1]  On June 6, 2017, Movant, represented by Sarah Timmers, pleaded guilty to all counts.  [Doc. 138; Doc. 260].

In the Presentence Investigation Report (PSR), the probation officer calculated a base offense level of thirty and a two-level increase for Movant's aggravating role in the offense, U.S.S.G. § 3B1.1(c), with no acceptance-of-responsibility decrease under U.S.S.G. § 3E1.1(a) or safety-valve decrease under U.S.S.G. § 2D1.1(b)(17) (2017).[2]  [Doc. 242 at 34-36, ¶¶ 85-90].  Based thereon, Movant's total offense level was thirty-two, which yielded a guideline range of 121 to 151 months, subject to a statutory ten-year mandatory minimum.  [Id. at 44].  Movant initially objected to the PSR, but later withdrew his objections because he had, through new counsel, Dennis Craig O'Brien, entered into an oral agreement with the Government to withdraw objections in exchange for the Government's agreement to recommend a 121-month sentence, at the low end of the guideline range.  [Doc. 208 at 1].  The Court accepted the recommendation.  [Doc. 261 at 18].  The Court found that Movant's total offense

---

[1] The Court cites to the cm/ecf electronic pagination.

[2] Section 2D1.1(b)(17) currently is found at § 2D1.1(b)(18).  In this Report and Recommendation, the Court cites to § 2D1.1(b)(17).

level was thirty-two, with a guideline range of 121 to 151 months,[3] with a ten-year mandatory minimum, and sentenced Movant to a 121-month term of imprisonment on each count, to run concurrently. [Id. at 11-12, 17-18].

Movant appealed, and counsel filed an Anders brief[4] that raised as potential issues the Court's assigning Movant an aggravating-role increase, which foreclosed a safety-valve decrease, and the Court's failure to grant a decrease for acceptance of responsibility. [Doc. 460-11 at 16]. In reply to the Anders brief, Movant argued that, to the extent the issues were barred due to counsel's waiver of objections, counsel had waived the issues in error. [Doc. 460-12 at 4]. On January 9, 2019, the Eleventh Circuit Court of Appeals found no arguable issues of merit on direct appeal and affirmed the judgment against Movant. [Doc. 460-13 at 3; Doc. 321].[5]

---

[3] Without a two-level aggravated role increase and with a two-level decrease for acceptance of responsibility and a two-level safety-valve decrease, Movant's offense level would have been twenty-six, with a 63 to 78 month guideline range. See U.S.S.G. Ch. 5, Pt. A., Sentencing Table.

[4] Anders v. California, 386 U.S. 738, 744 (1967) (holding that an attorney may move to withdraw on grounds that an appeal is "wholly frivolous" if the motion is "accompanied by a brief referring to anything in the record that might arguably support the appeal").

[5] Because the PSR objections were waived, plain error review would have

4

Movant now seeks collateral relief under § 2255.  [Doc. 394].  Movant raises two grounds for relief:  (1) ineffective assistance of counsel for the withdrawal of objections to the PSR, specifically in regard to the aggravating-role increase, lack of a safety-valve decrease, and lack of an acceptance-of-responsibility decrease,[6] and

---

applied to Movant's sentencing guidelines claims.  See United States v. Parks, 823 F.3d 990, 994 (11th Cir. 2016) (applying plain error when sentencing objection is waived).  Additionally, the Eleventh Circuit does not generally address claims of ineffective assistance of counsel on direct appeal.  Thomas v. United States, 572 F.3d 1300, 1304-05 (11th Cir. 2009) (stating that claims of ineffective assistance generally are not considered on direct appeal).  Accordingly, the Eleventh Circuit's rejection of sentencing claims under plain error, does not foreclose an analysis on whether sentencing counsel was ineffective on the issues or determine whether the issues would have failed had they been preserved at sentencing.

[6] In his current claim that counsel was ineffective for withdrawing objections, Movant mentions "minimal participation" and argues that he should have received a two-level decrease based on the combination of "minimal participation and application of the safety valve." [Doc. 394 at 4; Doc. 394-1 at 3-8].  Movant, however, does not mention U.S.S.G. § 3B1.2 or argue that he should have received a separate/independent mitigating-role decrease under § 3B1.2.  [Id.].  Notably, in his initial objections to the PSR (which Movant claims counsel was deficient for withdrawing), Movant never objected in regard to his role in the offense to the lack of a mitigating-role decrease under § 3B1.2.  [Doc. 242 at 36, ¶ 88].  It is not until his reply to Respondent's response that Movant, for the first time, argues that he was entitled to a mitigating-role decrease under § 3B1.2.  [Doc. 498 at 2, 6-7, 14].

Rule 2(b) of the Rules Governing Section 2255 Proceedings dictates that a § 2255 "motion must . . . specify all the grounds for relief available to the moving party."  The new claim which Movant attempts to raise in his reply fails because he

(2) ineffective assistance of counsel for failing to challenge Movant's alleged responsibility for Bojorquez-Amaya's distribution of heroin. [Id. at 4-5; Doc. 394-1 at 2-8].

## II.   **Standard**

### A.   **28 U.S.C. § 2255**

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. The § 2255 movant bears the burden to establish his or her right to collateral relief, Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015), which is limited.

---

did not raise it in his initial § 2255 motion as required under federal rules and because he has not sought to amend, leaving Respondent with no opportunity to respond to the new claim. See Barnes v. United States, 12-60011-CR, 2018 WL 2770171, at *12 (S.D. Fla. Mar. 28, 2018) (declining to consider issues raised for the first time in traverse/reply to response in § 2255 proceedings), R. & R. adopted, CV 16-62416-CIV, 2018 WL 2770125 (S.D. Fla. June 8, 2018); see also United States v. Sangs, 31 F. App'x 152, 2001 WL 1747884, at *1 (5th Cir. Dec.11, 2001) (affirming, in § 2255 proceedings, district court's refusal to consider issue raised for the first time in reply to government's answer-response). The Court does not further discuss § 3B1.2.

"Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," and "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 164, 166 (1982).  Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted).  A constitutional claim of ineffective assistance of counsel, which generally cannot be fully litigated on direct appeal, is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts.  Massaro v. United States, 538 U.S. 500, 505-09 (2003).

"The district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (quoting § 2255(b)).  That is the case here, as shown in the discussion below.

**B.**   **Ineffective Assistance of Counsel**

In his grounds for relief, Movant asserts ineffective assistance of counsel, to which Strickland v. Washington, 466 U.S. 668 (1984), applies. A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. Id. at 687. To show constitutionally ineffective assistance of counsel, a movant must establish (1) that counsel's representation was deficient and (2) that counsel's deficient representation prejudiced the movant. Id. at 690-92. The Court may resolve an ineffective assistance claim based on either of the above prongs. Pooler v. Sec'y, Fla. Dep't of Corr., 702 F.3d 1252, 1269 (11th Cir. 2012).

Under the first prong, a movant must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "Because we presume counsel was competent, [the movant] 'must establish that no competent counsel would have taken the action that his counsel did take.'" Dell v. United States, 710 F.3d 1267, 1281 (11th Cir. 2013) (quoting Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). Under the second prong, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome."
Strickland, 466 U.S. at 694. The habeas petitioner or § 2255 movant has the burden
of affirmatively proving prejudice, and a "conceivable effect" on the proceedings
does not show prejudice. Wood v. Allen, 542 F.3d 1281, 1309 (11th Cir. 2008)
(quoting Strickland, 466 U.S. at 693).

**III.    Discussion**

    **A.    Withdrawal of Objections to PSR**

        **1.    U.S.S.G. § 3E1.1(a) Acceptance of Responsibility**

Movant's statement on acceptance of responsibility included the following:
(1) that he had accepted a job as a drug courier swallowing drugs because he lost his
job[7] and was dealing with addiction issues, (2) that Bojorquez-Amaya asked Movant
for a job or job referral and Movant initially did not trust Bojorquez-Amaya and did
not help him, (3) that Movant subsequently "relented and remembered some people
who were looking for individuals to work" and gave Bojorquez-Amaya their

---

[7] Movant also clarified that he had worked as an international gigolo making
very good money, that he was no longer able to command the same prices, and that
courier work was an easy way to make fast money and feed his desire for cocaine.
[Doc 242 at 33-34, ¶ 81].

telephone number, (4) that, after Bojorquez-Amaya called and obtained the job, he contacted Movant to inform he was happy for the job and had a Visa, and (5) that Bojorquez-Amaya sent Movant a photograph of the Visa after Movant jokingly advised Bojorquez-Amaya that he did not believe he had a Visa.  [Doc. 242 at 33, ¶ 81].  Movant further stated that he met "Mello" at a gym and that Mello introduced Movant to the people with drugs who employed Movant as a courier.  [Id. at 34, ¶ 82].

The PSR found that a decrease for acceptance of responsibility under § 3E1.1(a) was unwarranted –

> According to the Government, the defendant has not assisted the authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty.  Based on the content of the defendant's objections, he has not accepted responsibility for his actions in this case.

[Doc. 242 at 36-38, ¶ 92].[8]  The PSR recorded the Government's argument as follows –

---

[8] As to the timing of Movant's guilty plea, he initially was arrested on September 27, 2016.  On May 10, 2017, after three co-defendants had pleaded guilty and after Movant had sought several continuances, the case was certified as ready for trial, and on June 6, 2017, Movant pleaded guilty.  [Docs. 72, 79, 80, 85, 86, 103, 108, 129, and 242 at 3].

Although the defendant entered a guilty plea, he has consistently attempted to minimize his conduct and repeatedly lied to the Government, reversing course only when confronted with evidence that specifically rebuts his purposefully misleading statements.  As an example, the defendant initially told SA Holt that, while he knew Allan Aaron Lopez Medina, Medina was not involved with the defendant's drug trafficking organization.  After being confronted with evidence to the contrary, the defendant admitted that Medina was an integral part of the drug trafficking conspiracy.  See PSR ¶¶ 62, 71. . . . [9]  In addition, the defendant chose to speak with the Government only after the Government provided the defendant with a report concerning the Government's interview with co-conspirator Angel Bojorquez-Amaya, which the Government was under no obligation to do.  Since that time, the defendant has consistently attempted to minimize his role in recruiting Bojorquez-Amaya and in the organization more generally, most recently in the statement he submitted to the probation office.  Notwithstanding the overwhelming and indisputable evidence to the contrary, the defendant claims he was merely a "drug courier."

The defendant claims he "remembered some people who were looking for individuals to work," in reference to co-defendants Arevalo and Juarez.  See PSR ¶¶ 81-82.  But the PSR amply describes the defendant's

---

[9]  Movant, in his May 4, 2017 proffer advised that he had known Allan Aaron Lopez Medina, who lived in Spain, for approximately three years and that he was not aware of Lopez Medina being involved in drug trafficking.  [Doc. 242 at 29, ¶ 62].  Western Union records, however, showed that Lopez Medina (who had suspicious transfers and was suspected as being a narcotics distributer and money launderer) received from Movant a $750.00 money transfer from Guatemala to Spain in May 2014 and sent to Movant a $1,498.84 transfer from Switzerland to Guatemala in April 2015.  [Doc. 242 at 14, ¶ 36].  Movant agreed that the wire transfers involved Lopez Medina and the narcotics trade, [id.], and, in a May 8, 2017 proffer session identified Lopez Medina's photograph, [id. at 31, ¶ 71].

close ties to Arevalo and Juarez, including his conversations with a co-conspirator after Arevalo and Juarez did not check in after arriving in Switzerland with narcotics.  See PSR ¶ 55.  After Arevalo and Juarez's arrest in Switzerland, the defendant personally met with "Pepe," the source of supply.   See id.  Such conduct is flatly inconsistent with acceptance of responsibility.

[Doc. 242 at 37-38, ¶ 92].

Movant objected.  As to the timeliness of his plea, Movant argued that he had filed no pretrial motions other than a motion to withdraw by counsel[10] and that, as soon as his attorney-client issues were resolved, counsel immediately notified the Government of Movant's change of plea.  [Id. at 38, ¶ 92].  Movant also objected as follows –

> [I]t appears as though the Government is withholding making the motion because the defendant was not immediately forthright with information regarding Allen Lopez Medina.  However, the defendant eventually told the truth about Allen Lopez Medina and it can be argued that he offered the Government substantial assistance.  Prior to the extradition of Arevalo and Juarez to the United States, it was the defendant who confirmed the identity of Allen Lopez Medina and that he is a Guatemalan money launder[er] involved in a Guatemalan narcotics conspiracy.  The Government is choosing to disbelieve anything that the defendant stated to them in his three proffers.

---

[10] Movant also filed several motions to continue the time for filing pretrial motions.  [Docs. 79, 85, 103, 108].

12

[Id.].

In light of Movant's statement on acceptance of responsibility (that he was an addicted drug courier in financial straits who had simply given a telephone number to an alleged recruit), investigation of the Western Union money transfers, interviews of Movant and co-defendants, and examination of Movant's cellular telephone, [Doc. 242 at 14-33, ¶¶ 36-78, 81-82], and on consideration of the Government's and Movant's arguments, [id. at 36-38, ¶ 92], the probation officer stated in the PSR that Movant had denied relevant conduct in regard to his role and the scope of the offense and did not qualify for an offense level decrease based on acceptance of responsibility, [id. at 38, ¶ 92].

Subsequently, Movant's counsel, on conferral with Movant, moved to withdraw the objections because Movant had entered an oral agreement with the Government to withdraw objections in exchange for the Government's agreement to recommend a 121-month sentence, at the low end of the guideline range.  [Doc. 208 at 1].

At sentencing, Movant, through counsel, stated that it seemed that he "was denied acceptance of responsibility primarily because he filed so many objections to the PSR."  [Doc. 261 at 4].  Movant's counsel then asked whether, now that there

were no objections, the Court would consider granting Movant a two-level decrease based on acceptance of responsibility and whether the Government would consider requesting an additional level. [Id.]. Counsel urged the Court to consider that Movant had admitted his involvement in September 2016 (when he was arrested); that prior counsel had not filed frivolous objections; that Movant had debriefed three times, "though the story may have morphed a bit"; that Movant had pleaded guilty; and that the objections had been withdrawn. [Id. at 5].

The Government responded that it disagreed with Movant's counsel on the extent to which Movant had been forthcoming on his role in the drug trafficking conspiracy and argued as follows –

> Over the course of the last 15 months, he has repeatedly minimized his conduct, tried to explain away whatever was in front of him at any given period of time.
>
> When he's confronted with new information that's inconsistent with whatever story he has told, he changes. And, most recently, HSI went and did a detailed review of his phone.
>
> The review of that phone was done precisely because the defendant had not been forthcoming about his involvement in this conspiracy. And his phone had detailed information about that that undermined his claims that he was just a drug courier or just an interpreter.

14

> And upon being confronted with all of that detailed information in his phone, that's when his story changed yet again. . . .
>
> . . .
>
> And his phone is full of these conversations that detail his role in this conspiracy.

[Id. at 6-7].  The Government asserted that the fact that Movant had not accepted responsibility was not changed by the withdrawal of his objections.  [Id. at 8].

When asked by the Court whether or not Movant was still seeking to withdraw his objection in regard to acceptance of responsibility, Movant through counsel clarified that he was withdrawing all objections, including the objection in regard to acceptance of responsibility.  [Id. at 9].  Movant was given an opportunity to address the Court at sentencing and told the Court that he was "just selfish because I was trying to get the money that I could to be able to buy the drugs that I could use"; that he was ashamed "because having gotten Mr. Bojorquez-Amaya involved in this by giving him a number so he could get in touch with some of these people, I know he has suffered a lot"; and that he, Movant, "was just very selfish and I was just looking for a way to satisfy my addictions."  [Id. at 17].  Movant at no time indicated to the Court that he disapproved of the withdrawal of any of the objections.  [Id. at 16-17].

15

The Court accepted the findings of fact and conclusions of law in the PSR and found that Movant's total offense level was thirty-two, with a guideline range of 121 to 151 months and subject to a statutory ten-year mandatory minimum.  [Id. at 10-12].[11]  The Court further accepted Movant's and the Government's agreed-upon recommendation to sentence Movant at the low end of the guideline range and imposed a 121-month term of imprisonment.   [Id. at 11-15, 17-18].

Movant now argues that counsel was ineffective (1) because without cause (under the mistaken belief that Movant's objections were the reason he was denied a decrease for acceptance of responsibility) he withdrew objections on acceptance of responsibility and (2) because, even when he knew his belief was mistaken, he affirmed that the objections were withdrawn.  [Doc. 394 at 4; Doc. 394-1 at 3]. Movant further argues that he was entitled to a two-level decrease for acceptance of

---

[11]  The Court notes, as to all of Movant's grounds for relief, that challenges to factual matters presented in the PSR that are not raised at sentencing cannot be raised in a § 2255 petition.  See Simmons v. United States, 777 F. 2d 660, 662 (11th Cir. 1985) ("Simmons' assertions are laid to rest by the fact that he and his attorney had access to the report before sentencing, had an opportunity to raise objections. . . , but did not include the objections now made. This comes too late."); United States v. McCray, 567 F. App'x 859, 860 (11th Cir. 2014) ("[A] defendant cannot challenge the accuracy of his presentencing report for the first time in a collateral attack.").

responsibility under § 3E1.1(a).  [Id. at 4-5].  Movant argues that the Government's contention in ¶ 92 of the PSR – that Movant was untruthful (which revolved around Movant's denial of Medina's involvement) – is erroneous because Movant was not frivolously challenging his conduct but was challenging a "detrimental factual issue that has yet to be resolved" and because Movant has a "right to protect his family and not inform on another individual."  [Id. at 4].

Respondent argues that the record shows counsel withdrew the objections based on the agreement between Movant and the Government, in which Movant agreed to withdraw objections in exchange for the Government agreeing to recommend a low guideline sentence, which the Government did recommend and which the Court accepted.  Respondent argues that counsel's action was not deficient. [Doc. 460 at 10-11].[12]

Movant replies that, if his objections had not been withdrawn, his testimony would have supported his objections and reasonably could have resulted in Movant receiving a lesser sentence.  [Doc. 498 at 6].  As to acceptance of responsibility,

_____

[12] The Court notes that Respondent's argument, as to all grounds, that Movant's appeal forecloses an ineffective-assistance-of-counsel claim, [Doc. 460 at 7-9, 17-18], is incorrect, and is not further addressed.  See supra n.5.

Movant states (1) that his guilty plea removed the Government's need to prepare for trial and (2) that, had objections not been withdrawn, his (unspecified) testimony at sentencing would have shown acceptance, even though he would have contested the aggravating-role increase. [Id. at 15-16].

A defendant is entitled to a two-level reduction in his offense level if he clearly demonstrates acceptance of responsibility for his offense. U.S.S.G § 3E1.1(a). "The defendant bears the burden of clearly demonstrating acceptance of responsibility and must present more than just a guilty plea." United States v. Wright, 862 F.3d 1265, 1279 (11th Cir. 2017) (quoting United States v. Sawyer, 180 F.3d 1319, 1323 (11th Cir. 1999)).

> A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous[.]

U.S.S.G. 3E1.1, Application Note 1.(A).

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct) . . . , will constitute significant evidence of

18

acceptance of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

U.S.S.G. 3E1.1, Application Note 3.

Movant's arguments fail to show that he received ineffective assistance of counsel in regard to acceptance of responsibility. Although not reason to resolve Movant's claim, the Court observes that at sentencing Movant appears to have agreed with counsel's decision to withdraw the objections. The objections had been withdrawn before sentencing on conferral with Movant. When the matter was fully discussed at sentencing as to whether Movant wished to reinstate his objection on acceptance of responsibility or to withdraw it, Movant's counsel reaffirmed that all of the objections were withdrawn – "we certainly withdraw all objections." [Doc. 261 at 9]. Subsequently, the Court provided Movant with ample opportunity to speak to the Court. [Id. at 16-17]. In addressing the Court, Movant did not indicate any disapproval of the withdrawal of objections and concluded, "That's all I have to say. Thank you very much, your Honor." [Id. at 17].

Further, both of Movant's arguments in his motion to vacate fail to show that counsel was ineffective. Movant's argument that counsel was ineffective because he

19

withdrew the objections without cause fails because the record demonstrates that counsel withdrew the objections not without cause but to comply with Movant's agreement with the Government, in which the Government agreed to recommend a sentence at the low end of the guideline range. Additionally, the PSR is clear that acceptance of responsibility was withheld because of Movant's denial of responsibility in regard to his role and the scope of the offense. [See Doc. 242 at 38, ¶ 92]. Counsel's hopeful and strained attempt at sentencing both to withdraw the objections *and* obtain an acceptance of responsibility decrease simply does not show that counsel ineffectively withdrew the objections based on a mistaken belief that Movant would then be able to receive a decrease based on acceptance of responsibility.

The remainder of Movant's argument also fails to meet his burden – both the underlying burden of demonstrating acceptance of responsibility and the burden of showing (1) that no reasonable counsel would have withdrawn the objection on acceptance of responsibility and (2) that there is reasonable probability that pursuit of the objection would have resulted in a more favorable outcome for Movant. Movant's argument – that his initial denial of Medina's involvement does not really show untruthfulness, [see Doc. 394-1 at 4] – continues Movant's earlier (withdrawn)

argument that he "eventually told the truth" about Medina. [Doc. 242 at 38, ¶ 92]. Movant's argument, which essentially ignores his lack of truthfulness in his May 4, 2017 proffer, is insufficient to show that he was entitled to an acceptance-of-responsibility decrease or that no reasonable counsel would have failed to pursue the decrease. See supra n.9; United States v. Tejas, 868 F.3d 1242, 1248 (11th Cir. 2017) ("While a defendant may remain silent with respect to relevant conduct beyond the offense of conviction, a defendant who falsely denies relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."). Had counsel, instead of withdrawing his objection, pursued the matter as argued in Movant's motion to vacate, there is no reasonable probability that it would have changed the outcome favorably to Movant.

## 2. U.S.S.G. § 3B1.1 Aggravating Role and U.S.S.G. 2D1.1(b)(17)

The PSR stated that a two-level decrease under § 2D1.1(b)(17) was unwarranted as Movant did not meet the criteria in U.S.S.G. § 5C1.2 (referred to as the safety-valve provision), specifically, Movant was subject to an aggravating-role increase under § 3B1.1(c) and he had not fully debriefed with the Government. [Doc. 242 at 35-36, ¶¶ 86, 88]. The PSR applied a two-level increase under § 3B1.1(c) based on Movant's role in the offense as an organizer, leader, manager, or supervisor

21

– "As indicated by information retrieved from [Movant's] cellular telephone, [Movant's] organized drug activity between Primo and Pelon,[13] to include instructing Pelon regarding currency transfer and type.[14] [Movant] also recruited Bojorquez-Amaya.[15]" [Id. at 36, ¶ 88].

On the denial of a safety-valve decrease, Movant objected based on his objection to the aggravating-role increase and because he was scheduled for

---

[13] The conspiracy involved a person known as Primo in Guatemala, who received narcotics from a supplier named Pepe, and a person known as Pelon, who purchased and received narcotics in Europe. [Doc. 242 at 8, ¶ 14].

[14] An examination of Movant's cellular telephone showed various directions given by Movant. [Doc. 242 at 20-26, ¶¶ 54-55]. For example, the conversations indicate that Movant was responsible for sending a DJ (a narcotics courier) to Pelon and approving the timing of payments. [Id. at 22, ¶ 55]. Also, Movant texted Primo about his efforts to collect money from Pelon and directed Primo that, based on the time it took Pelon to pay, they should not send anymore to Pelon unless he asked for it. [Id. at 26, ¶ 55].

[15] Bojorquez-Amaya advised that he asked Movant for help obtaining money and alcohol; that Movant told him that he could introduce him to individuals who could help him; that Movant personally introduced Bojorquez-Amaya to Arevalo in Guatemala and that Bojorquez-Amaya later met with Arevalo and Juarez to discuss transporting drugs to New York; that Movant subsequently drove Bojorquez-Amaya to Arevalo's home in Guatemala to pick up money and portfolios and then drove him to the airport; that en route to the airport Movant suggested that Bojorquez-Amaya consume alcohol, which he did; and that after Bojorquez-Amaya's arrest at the Atlanta airport, Movant spoke with Bojorquez-Amaya by phone and told him "to be careful and remember he was not alone." [Doc. 242 at 16-19, ¶¶ 40, 42, 46, 48, 50].

debriefing.  [Id. at 35, ¶ 86].  On the aggravating-role increase, Movant objected

(1) that he did not organize the drug activity between Primo and Pelon but had acted

as interpreter and (2) that Bojorquez-Amaya had approached Movant regarding ways

to make fast money and Movant provided an exchange of phone numbers but nothing

else.  [Id. at 36, ¶ 88].

> The probation officer determined –
>
> The preponderance of the evidence indicates that the defendant recruited
> Bojorquez-Amaya and organized drug activity between Primo and
> Pelon.  The defendant introduced Bojorquez-Amaya to Arevalo and
> Juarez, went with Bojorquez-Amaya when he met with Arevalo and
> Juarez, drove Bojorquez-Amaya to the airport, and continued to monitor
> Bojorquez-Amaya's progress as Bojorquez-Amaya transported the
> drugs he was carrying.  The defendant also organized and monitored
> drug shipments and payments, as well as the progress of individuals
> participating in the movement and payment of drugs.  There is no
> indication from the conversations available that the defendant was
> acting as an interpreter.  Therefore, the two-level increase for role is
> appropriate.

[Id.].  The probation officer determined that the aggravating-role increase foreclosed

application of the safety valve.  [Id. at 35, ¶ 86].

As discussed earlier, Movant withdrew his objections and was sentenced at the

low end of the guideline range, in accord with his and the Government's agreement

and recommendation to the court.

23

Movant now argues that counsel was ineffective (1) because without cause (based on a mistaken belief that Movant's objections were the reason he was denied a decrease for acceptance of responsibility) he withdrew the PSR objections on the aggravating-role increase and denial of a safety-valve decrease and (2) because, even when he knew his belief was mistaken, he affirmed that the objections were withdrawn. [Doc. 394 at 4; Doc. 394-1 at 3]. Movant asserts that he should not have received an aggravating-role increase and argues (1) that he only "made arrangements and facilitated sales as a translator on behalf of Primo to distribute drugs to Pelon" and (2) that he never recruited (sought to enlist) Bojorquez-Amaya but rather facilitated his participation – Movant "had a **friend approach him** for work and . . . presented the individual to an actual recruiter." [Doc. 394-1 at 5-6 (emphasis in original)]. Movant further argues that mere distribution of drugs is not enough to show a leadership role. [Id. at 6]. Movant argues that he was prejudiced (1) by the two-level aggravating-role increase and (2) because he was denied application of the safety valve. [Id. at 6-8]. Movant refers to 18 U.S.C. § 3553(f) and argues that the safety-valve provision applied because, under § 3553(f)(4), he should not have received the aggravating-role increase and because, even if he was

24

an organizer/leader, he was not engaged in a continuing criminal enterprise.[16]  [Doc. 394-1 at 7-8].

Respondent argues that counsel was not deficient for withdrawing the objections in exchange with the Government agreeing to recommend a low guideline sentence, which the Government did recommend and which the Court accepted. [Doc. 460 at 10-11].  Respondent further argues (1) that Movant's argument that he facilitated Bojorquez-Amaya's participation but did not recruit him is a meaningless distinction when Movant has admitted that he got Bojorquez-Amaya involved; (2) that Movant's communications show that he instructed other participants, was intricately involved in the conspiracy, and was not merely a translator; and (3) that Movant's aggravating role forecloses application of the safety valve.  [Id. at 14-15].

Movant replies that if his objections had not been withdrawn, his testimony would have supported his objections and reasonably could have resulted in a lesser sentence.  [Doc. 498 at 6].  As to the aggravating-role increase, Movant again states

---

[16] Movant misunderstands § 3553(f)(4), which for safety-valve eligibility requires a defendant to establish both of two matters – "that the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing criminal enterprise . . . ."

that Bojorquez-Amaya was recruited by Arevalo (with Movant only providing a telephone number) and that Movant only worked as a courier and translator.  [Id. at 7-9].

A defendant's offense level is subject to a two-level increase if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity[.]"  U.S.S.G. § 3B1.1(a).

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. 3B1.1, Application Note 4.

There is no requirement that all of the factors be present, and "[i]n many of the cases where [the Eleventh Circuit has] affirmed a finding that a defendant played a leadership or organizational role under U.S.S.G. § 3B1.1(a), there was evidence that the defendant had recruited participants, had instructed participants, or had wielded decision-making authority."  United States v. Caraballo, 595 F.3d 1214, 1231 (11th Cir. 2010).  A defendant's "assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement[.]"  United States v. Espinoza, 651 F.

26

App'x 898, 900 (11th Cir. 2016) (quoting United States v. Jiminez, 224 F.3d 1243, 1251 (11th Cir. 2000)) ("Undisputed facts in the PSR establish that Espinoza was more than simply a middleman or a distributor, and that he exercised control or influence over at least one other participant in the conspiracy."). "Similarly, evidence that a defendant recruited one individual is sufficient to support a § 3B1.1(c) enhancement." United States v. Mendoza, 257 F. App'x 204, 205 (11th Cir. 2007) (citing United States v. Mandhai, 375 F.3d 1243, 1248 (11th Cir. 2004)). There must be evidence of some control over another participant in the criminal activity, and "merely distributing drugs and making arrangements for the delivery and sale of drugs . . . is not enough to demonstrate a leadership role." United States v. Abney, 710 F. App'x 375, 378 (11th Cir. 2017) (quoting United States v. Martinez, 584 F.3d 1022, 1028 (11th Cir. 2009)).

Under what is known as the safety valve, the court is permitted, in certain cases, to impose a sentence pursuant to the guidelines and without regard to a statutory minimum. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a) United States v. Sanchez, 795 F. App'x 704, 706 (11th Cir. 2019). Eligibility requires, among other things, that –

> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines

27

and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C.A. § 3553(f). Additionally, the sentencing guidelines, U.S.S.G. § 2D1.1(b)(17) (2017) allow a two-level decrease if a defendant meets the criteria set forth in U.S.S.G. § 5C1.2(a) (requiring that the defendant have no more than one criminal history point and otherwise essentially identical to § 3553(f)). A defendant who has received an aggravated role enhancement is not eligible for application of the safety valve under § 3553(f) or § 5C1.2. United States v. Gadd, 701 F. App'x 855, 860 (11th Cir. 2017); United States v. Rendon, 354 F.3d 1320, 1333 (11th Cir. 2003).

For the same reasons as stated above in dealing with acceptance of responsibility, Movant's argument that counsel was ineffective because he withdrew the objections without cause fails because the record demonstrates that counsel withdrew the objections not without cause but in accord with Movant's agreement

28

with the Government, in which the Government agreed to recommend a sentence at the low end of the guideline range.  Further, Movant fails to show that, had counsel persisted in challenging the aggravating-role increase, there is a reasonable probability that the result would have been more favorable to Movant.  The increase is warranted as Movant recruited Bojorquez-Amaya.  [Doc. 242 at 16-19, 36, ¶¶ 42, 46, 48, 50, 88]; see United States v. Arango-Vidal, 127 F. App'x 566, 567 (2d Cir. 2005) ("We agree with the district court that by introducing Macias to the men in charge of the criminal activity so that Macias could join in the criminal enterprise, Arango recruited Macias within the meaning of section 3B1.1.").  Movant's cellular phone records also show Movant's control and direction in regard to the crimes committed.  [Doc. 242 at 20-26, ¶¶ 54, 55].  Movant was not merely making arrangements for the delivery of drugs.

Because Movant fails to show a reasonable probability that an objection to an aggravating-role increase would have been successful, he cannot show that he was entitled to application of the safety valve under § 3553(f) or § 2D1.1(b)(17). Moreover, even without an aggravating-role increase, the safety valve is inapplicable because Movant completely fails to show that he satisfied the requirement to truthfully provide the Government all information and evidence that he had

29

concerning the offenses.  See Krecht v. United States, 846 F. Supp. 2d 1268, 1289 (S.D. Fla. 2012) ("Because Krecht had the burden of proving his eligibility for safety-valve relief, he had to convince the district court to make a finding that he truthfully provided to the government all information and evidence he had concerning the offense. . . . While the record establishes that Krecht did provide some information, Krecht has not yet sufficiently established that he provided all the information he had about the offense before sentencing." (citing United States v. Milkintas, 470 F.3d 1339 (11th Cir. 2006))).  Movant does not show that counsel was ineffective in withdrawing objections to the aggravating-role increase and to the denial of a safety-valve decrease.

**B.    Failure to Challenge Movant's Responsibility for Heroin Attributed to Bojorquez-Amaya**

As indicated above, Movant pleaded guilty (1) to conspiring with, among others, Bojorquez-Amaya to possess with the intent to distribute and to knowingly and intentionally import "at least one kilogram of a mixture and substance containing a detectable amount of heroin" and (2) to possessing with intent to distribute and to knowingly and intentionally importing "at least one kilogram of a mixture and

30

substance containing a detectable amount of heroin"[17] into the United States, aided and abetted by others, including Bojorquez-Amaya. [Doc. 93 at 2-4; Docs. 138, 260]. In relating the facts of the case at the plea hearing, the Government, among other things, stated that Bojorquez-Amaya was arrested carrying approximately 2.18 kilograms of heroin. [Doc. 260 at 16]. The Court questioned Movant as to his guilt on counts one through four and asked whether he had "conspired with the other codefendants . . . to possess with the intent to distribute at least 1 kilogram of heroin," whether he "conspired with the codefendants to import at least 1 kilogram of heroin[,]" whether he "aided and abetted the other defendants . . . to possess with the intent to distribute at least 1 kilogram of heroin[,]" and whether he "aided and abetted the other codefendants in intentionally importing at least one kilogram of heroin into the United States." [Id. at 19-20]. Each time, Movant responded, "Yes, your Honor." [Id.].

---

[17] "In determining the weight of a controlled substance, the sentencing guidelines instruct courts to use 'the entire weight of any mixture or substance containing a detectable amount of the controlled substance.' U.S. Sentencing Guidelines Manual § 2D1.1(c), app. note (A)[.]" United States v. Paige, 755 F. App'x 951, 952 (11th Cir. 2019).

The PSR attributed to Movant the 2.18 kilograms of heroin (equivalent to 2,180 kilograms of Marijuana) that Bojorquez-Amaya brought into the United States, which yielded a total Marijuana equivalent of 2,708.652 kilograms and a base offense level of 30 Under U.S.S.G. § 2D1.1(c)(5).[18]   [Doc. 242 at 32-33, 35, ¶¶ 79, 85].

Movant argues that counsel was ineffective for failing to challenge the lack of factual evidence to show that Movant was responsible for Bojorquez-Amaya's distribution of 2.18 kilograms of heroin.   [Doc. 394 at 4-5; 394-1 at 8-9].   Movant argues that the evidence shows that Movant had no authority over Bojorquez-Amaya and that Movant "never agreed to nor had any participation in or knowledge of any heroin transactions."   [Doc. 394-1 at 9-10].   Movant argues that, without the 2,180 kilograms of Marijuana equivalent, the total Marijuana equivalent would have been 528.652 kilograms, which would have yielded a base offense level of twenty-six instead of thirty.   [Id. at 8].

_____

[18] Section 2D1.1(c)(5) dictates an offense level of thirty for the equivalent of at least 1,000 kilograms but less than 3,000 kilograms of Marijuana. Section 2D1.1(c)(7) dictates an offense level of twenty-six for the equivalent of at least 400 kilograms but less than 700 kilograms of Marijuana.

Respondent argues that there is no prejudice to Movant when he pleaded guilty to crimes involving at least one kilogram of heroin, which requires a base offense level of thirty.  [Doc. 460 at 22].

The Court agrees with Respondent that Movant fails to show prejudice.  Had counsel successfully argued against attributing the full 2.18 kilograms of heroin to Movant, Movant nonetheless had pleaded guilty to crimes involving at least one kilogram of heroin (equivalent to 1,000 kilograms of Marijuana), which would have yielded a total Marijuana equivalent of 1,528.652 kilograms and a base offense level of 30 Under U.S.S.G. § 2D1.1(c)(5).  Movant's second ground fails.

## IV.    **Certificate of Appealability (COA)**

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Melton v. Sec'y, Fla.

33

Dep't of Corr., 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).

The undersigned recommends that a COA should be denied because it is not reasonably debatable that Movant fails to show that he is entitled to collateral relief. If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing § 2255 Proceedings for the United States District Courts.

## V.   Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion [Doc. 394] to vacate, set aside, or correct his federal sentence be **DENIED** and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 17th day of July, 2020.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE

34